# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| ANTONIO AGUILAR SANCHEZ, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. EP-19-CV-00175-ATB |
| | § | |
| ANDREW M. SAUL, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Antonio Aguilar Sanchez ("Sanchez") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On June 1, 2017, Sanchez filed an application for DIB, alleging a disability onset date on January 5, 2017. (R. 15). Sanchez's application was denied initially on July 31, 2017, and upon reconsideration on December 1, 2017. (R. 15). An Administrative Law Judge ("ALJ") held a hearing on August 21, 2018. (R. 33-61). The ALJ issued a decision ("Decision") on September

13, 2018, finding that Sanchez was not disabled. (R. 15-26). On May 30, 2019, the Appeals Council denied Sanchez's request for review of the ALJ's Decision. (R. 1-6).

## II. ISSUES

Sanchez presents the following issues for review:

1. Whether "[t]he ALJ erred in using Plaintiff's unsuccessful work attempt during the 1st quarter of 2017 as evidence to contradict the intensity, persistence, and limiting effects of his degenerative disc diseases" and whether "[t]he ALJ erred by using employment data that precedes Plaintiff's disability onset date as evidence to disqualify" (ECF No. 11, p. 2-4) [1];

2. Whether "[t]he ALJ erred in relying on the vocational expert's testimony" (*Id.*); and

3. Whether "[t]he ALJ erred in relying on obsolete DOT data because the O*NET contradicts it" (*Id.* at 7).

## III. DISCUSSION

### a. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citation omitted). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.

---

[1] While Sanchez raises the consideration by the ALJ of his 2016 and 2017 earnings as two separate issues, because of the interconnectedness of the analysis the Court will analyze the consideration of his earnings as a single issue.

Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

  **b.**  **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence.

*Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity."[2] (R. 17). At step two, the ALJ found Sanchez's degenerative disc disease of the back to be severe and that the severe impairment substantially limits his ability to perform basic work activities. (R. 17). The ALJ further found:

> [Sanchez] has the non-severe impairments of bilateral hand pain; chronic pain; obesity; diabetes; vision problems; neuropathy; psoriasis; allergic rhinitis; male erectile dysfunction; essential hypertension; hyperlipidemia; headaches; Rheumatoid arthritis; insomnia; depression; hyperlipidemia; right hand carpal tunnel syndrome; tibialis posterior tendinitis and ankle pain; constipation; and insomnia.

(R. 18). At step three, the ALJ found that Sanchez did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment. (R. 18). Before step four, the ALJ found:

> that [Sanchez] has the residual function capacity to perform light work . . . except he is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling. He is limited to frequent handling and fingering bilaterally. He must be allowed to alternately sit and stand every thirty minutes or so throughout the workday for the purpose of a brief postural change, but without leaving the workstation.

(R. 18). At step four, the ALJ determined that Sanchez could not perform any past relevant work. (R. 25). At step five, the ALJ found that "there are jobs that exist in significant numbers in the

---

[2] While the ALJ did not affirmatively state the relevant time period, Sanchez does not allege a step one error. Further, the ALJ proceeded to step two of the analysis. (R. 17); *see* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

4

national economy that [Sanchez] can perform." (R. 25). Accordingly, the ALJ found that Sanchez was not disabled within the meaning of the Social Security Act through the Decision date. (R. 26).

    **c.**    **Analysis**

    *1.*    *Consideration by the ALJ of Sanchez's 2016 and 2017 Earnings*

Sanchez argues that the ALJ erred in using his attempt to work after the alleged disability onset date "to discredit his statements about his disabling back condition." (ECF No. 11, p. 2). Further, Sanchez contends that the ALJ's consideration of employment data preceding his alleged disability onset date was an abuse of discretion and legal error. (ECF No. 11, p. 4).

"In reaching a conclusion regarding a claimant's disability, the ALJ considers all of the evidence presented, including prior work records, the claimant's statement about her symptoms, evidence submitted by a claimant's treating or nontreating source, and observations by other persons." *Robinson v. Astrue*, 365 F. App'x 993, 997 (11th Cir. 2010); *see Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 187 (10th Cir. 2018) ("The work history of a claimant is another relevant factor in evaluating a claimant's pain testimony."). Title 20 C.F.R. § 404.1529(c)(3) specifically directs that, in making the disability determination, the Administration "will consider all of the evidence presented, including information about your prior work record . . . ." 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ considered Sanchez's prior work record in finding that "his condition did not limit him significantly from working or seeking employment." (R. 24). In support of this conclusion, the ALJ examined Sanchez's medical records that showed no changes in the MRI of his lumbar spine between March 12, 2016, and March 16, 2017. (R. 24); *see* (R. 899-900). Sanchez does not challenge the ALJ's conclusion that despite having a history of chronic lumbar pain, the MRIs revealed no change in his lumbar spine between the period in which Sanchez was

5

working and after his alleged onset date. The ALJ found that Sanchez's earnings for the time period covered by the two MRIs show "that the claimant's conditions did not limit him significantly from working at substantial gainful activity levels." (R. 24). Further, the ALJ found that Sanchez "reported being able to work to the Texas Workforce Commission during [the third and fourth quarters of 2016 and the first quarter of 2017], which indicates his condition did not limit him significantly from working or seeking employment." (R. 24).

Accordingly, the Court finds that in accordance with 20 C.F.R. § 404.1529(c)(3), the ALJ did not err by considering Sanchez's work history in reaching a conclusion regarding his disability. Finally, the Court is not permitted to reweigh the evidence or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Therefore, the Court finds that the ALJ's conclusions relating to Sanchez's work and earnings from 2016 and 2017 are supported by substantial evidence.

### 2. *The ALJ's Reliance on the Vocational Expert's Testimony*

Sanchez's next alleged point of error was the ALJ's reliance on the VE's testimony in his step-five determination. (ECF No. 11, p. 5). First, Sanchez contends that the ALJ's reliance on the VE's testimony was misplaced because the VE relied on the Dictionary of Occupational Titles ("DOT"). (ECF No. 11, p. 5). Second, Sanchez contends that the ALJ failed to ask the VE if there was conflict between her testimony and the DOT as required by SSR 00-4p. (*Id*. at 6).

#### A. *The VE's Testimony Regarding Number of Jobs in the National Economy*

Sanchez contends that the ALJ's reliance on the VE's testimony regarding the number of jobs in the national economy that he could perform was reversible error because the VE relied on the outdated DOT and, therefore, the Commissioner did not utilize correct and reliable job data. (*Id*. at 4-5). Sanchez further contends that "[t]he DOT was rendered obsolete and was replaced by

an online government database called the Occupational Information Network . . . . The O*NET supersedes the outdated and obsolete DOT . . . ." (*Id*. at 5).

During the hearing before the ALJ, Sanchez did not object to the VE's testimony. *See* (R. 57-61). Further, after the ALJ questioned the VE, Sanchez's attorney, Ms. McDermitt, affirmatively stated that she "ha[d] no further additional questions" for the VE. (*Id*. at 61). Ms. McDermitt was afforded the opportunity to object and correct any perceived deficiencies in the VE's testimony during the hearing before the ALJ and chose not to object or ask the VE additional questions. *See* (*Id*. at 57-61). Therefore, "there is no reversible error." *Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)); *see Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (claimant "forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing.").

Further, the ALJ's reliance on the VE's testimony that was based upon the DOT was not erroneous. "[W]hile the DOT appears on the list of governmental and other publications from which the agency can take 'administrative notice of reliable job information,' the O*NET does not." *Malfer v. Colvin*, No. CIV.A. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013) (citing 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5)). "As a result of these regulations (and as the Seventh Circuit further observed in *Chavez*), 'the DOT is a source that VEs regularly canvass to identify job titles suitable for a claimant.'" *Ciara H. v. Saul*, No. 18 C 2741, 2019 WL 4573105, at *15 (N.D. Ill. Sept. 20, 2019) (quoting *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018) cert. denied, 139 S. Ct. 808 (2019)).

Sanchez cites multiple cases, including some from the Seventh Circuit, which are critical of the DOT because of the length of time since the DOT was last updated. *See* (ECF No. 11, p. 4-

7

5). However, despite being critical of the DOT, the Seventh Circuit has recognized that "[t]he Social Security Administration's regulations authorize the agency to 'take administrative notice of reliable job information' from the DOT, among other publications." *Chavez*, 895 F.3d at 965 (7th Cir. 2018) (quoting 20 C.F.R. § 416.966(d)(1)). Accordingly, the Court finds that even if Sanchez's challenge to the VE's testimony was not waived, the ALJ's reliance on the VE, who in turn relied on the DOT without reference to the O*NET, was permissible and such reliance does not constitute reversible error.

      B.      *Conflict Between the VE's Testimony and the DOT*

Sanchez further argues that the ALJ erred in relying on the VE's testimony because the ALJ has an obligation to ask about and resolve any issues between the VE's testimony and the DOT. (ECF No. 11, p. 6-7). An ALJ is required to inquire on the record at the administrative hearing if the VE's testimony is consistent with the DOT. SSR-004p, 2000 WL 1898704.

Notwithstanding Sanchez's assertion to the contrary, the ALJ specifically inquired about conflicts between the VE's testimony and the DOT. The ALJ affirmatively asked the VE if her "testimony has been consistent with the Dictionary of Occupational Titles?" (R. 60). The VE responded that "[t]he DOT does not address the sit/stand option or breaks or absenteeism. That's based on my experience in placement, but other than that, yes, Your Honor." (R. 61). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Accordingly, the Court finds that the ALJ satisfied his obligation to address and resolve any potential conflicts between the testimony of the VE and the DOT.

### 3. The ALJ's Reliance on DOT Job Numbers

Sanchez's final alleged point of error is that the ALJ erred in relying on the data contained within the DOT because of the contradictory job information contained within the O*NET. First, "while the DOT appears on the list of governmental and other publications from which the agency can take 'administrative notice of reliable job information,' the O*NET does not." *Malfer*, 2013 WL 5375775, at *5 (citing 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5)). Second, while SSR 00-4p requires the ALJ to inquire about and resolve any conflicts between the DOT and the VE's testimony, it does not impose a similar requirement to resolve conflicts between the DOT and the O*NET. *See* SSR-004p, 2000 WL 1898704; *see also Malfer*, 2013 WL 5375775 at *5 ("even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database."). Further, even if conflicts between the DOT and O*NET had to be resolved, Sanchez provides no authority for the proposition that those conflicts must be resolved in favor of O*NET. Finally, a panel commissioned by the Social Security Administration found "that the O*NET in its current form is not suitable for disability adjudication." *Moffit v. Berryhill*, No. CV 17-4015-JWL, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (citation and quotation marks omitted).

Accordingly, and for the reasons set forth above in section III(c)(2)(A), the Court finds that the ALJ's reliance on the DOT was not erroneous, notwithstanding any contradictions between the DOT and O*NET.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision denying benefits is **AFFIRMED**.

**SIGNED** and **ENTERED** this 2nd day of January, 2020.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**